[Civ. No. 13054.   Second Dist., Div. Two.   July 29, 1941.]

CHRIS ·AMENDT, Appellant, v. PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation), Respondent.

Paul Blackwood and Samuel P. Young for Appellant.

Frank Karr, C. W. Cornell and O. O. Collins for Respondent.

MOORE, P. J.—Plaintiff appeals from a judgment entered after a nonsuit had been granted on defendant's motion. The action was to recover for personal injuries suffered when plaintiff was struck by one of defendant's streetcars in the city of Los Angeles.

On the occasion in question, plaintiff while proceeding easterly on the north sidewalk of Santa Monica Boulevard

approached its right angle crossing with Fairfax Avenue. That is a busy intersection, consisting not only of heavy flows of automotive traffic on both streets but also of two streetcar tracks of defendant on the boulevard upon which travel interurban cars from the city to outlying communities. To complicate the traffic problem there defendant has a right-of-way 36 feet in width, extending from the northeast corner of the intersection northeasterly toward Hollywood Boulevard. The boundary lines of this private right-of-way intersect the property lines of the boulevard and the avenue at angles of about 45 degrees. Over this right-of-way a system of double tracks is laid, over which streetcars travel from Santa Monica Boulevard to Hollywood Boulevard, about one-half mile distant. This double track system enters Santa Monica Boulevard at Fairfax. The northerly rail of its southerly track intersects the northerly rail of the northerly track which lies in Santa Monica Boulevard at the very center of the intersection. At the time of plaintiff's arrival at the westerly curb of Fairfax a streetcar was standing at the southwest corner, headed eastward.

Before entering the intersection plaintiff awaited the ''Go'' signal, and before stepping into Fairfax Avenue to make his crossing he looked back to the southwest corner to see that the east bound streetcar was still standing. It stood in a position to continue east on the boulevard or diagonally to cross the intersection and to proceed northeasterly on the private right-of-way. After plaintiff had passed the center of Fairfax he looked again and saw that the car was still standing. The distance he had to travel from the time he left the center of Fairfax to the prolongation of the north sidewalk of Santa Monica Boulevard was about 53 feet. As he proceeded within the crosswalk easterly of the center of Fairfax his attention was engaged by motor traffic going east and west, both of which might turn north out of Santa Monica Boulevard into Fairfax; also by a west bound car on the Hollywood line, which came to a stop on the private right-of-way a short distance from the crosswalk and plaintiff. After observing this car come to a stop plaintiff continued directly along the course necessary to be traveled to enable him to reach a place of safety on the sidewalk. He watched for the west bound automobiles and listened for the east bound car which he had seen standing at the southwest corner. When he looked for the second time to the southwest he was about 10 feet from the northerly rail of the west bound Hollywood track. Before stepping upon the northerly track on which the Hollywood west bound car would come he looked to his left only to see that car start up, ringing its gong. It was then 35 feet distant to the northeast of him. While watching on his right for motor traffic he advanced, listening for the bell of the car which had been standing.

For more than five years plaintiff had crossed the intersection almost every day, and was conscious of the presence of the tracks and of the practice of defendant's motormen to ring their gongs before entering the crosswalk. No warning was given by the east bound car. The west bound car sounded its gong as plaintiff stood upon its track. Thereupon he proceeded, still within the crosswalk, to the south track of the Hollywood line, where he was struck by the east bound car and dragged 30 feet, causing him serious injuries. It was early evening and the visibility was still good. During the five or six years he had lived in the vicinity plaintiff had seen a great many streetcars stop at the intersection for the embarka-

tion and discharge of passengers. He had observed that practically all cars give warnings before starting from the intersection and that some cars crossed the boulevard to go toward Hollywood while others continued directly east toward the city.

The only question for decision is whether plaintiff was guilty of contributory negligence, the basis of the trial court's ruling.

On behalf of its plea of contributory negligence respondent correctly declares a number of established legal principles usually invoked upon the trial of controversies arising out of crossing railway tracks. They follow: (1) it is the duty of a pedestrian to use such reasonable care as to avoid colliding with passing vehicles (*Finkle* v. *Tait*, 55 Cal. App. 425 [203 Pac. 1031]); (2) where a pedestrian is about to cross a track he must use his senses before stepping onto the track to ascertain whether a car is approaching, and if upon the track he must leave it when a car comes near (*Bailey* v. *Market St. Cable Ry. Co.*, 110 Cal. 320 [42 Pac. 914]); (3) a motorman cannot be charged with the duty of anticipating that anyone would suddenly step from a place of safety onto the car tracks in front of an approaching car, and that a streetcar company is not responsible to a person who carelessly or in an absent-minded way walks suddenly in front of a moving car (*Schooley* v. *Fresno Traction Co.*, 56 Cal. App. 705 [206 Pac. 481]; *Richardson* v. *Southern Pac. Co.*, 88 Cal. App. 648 [263 Pac. 1039]); (4) where a pedestrian steps directly in front of an approaching car and is struck instantly, but one inference can be drawn, towit, his negligence (25 R. C. L. 1285); (5) there is a duty devolving upon the ordinarily prudent man before placing himself in a position of danger to look in the direction of the anticipated peril (*Moss* v. *H. R. Boynton Co.*, 44 Cal. App. 474 [186 Pac. 631]; *Flores* v. *Los Angeles Ry. Corp.*, 15 Cal. App. (2d) 576 [59 Pac. (2d) 856]); (6) a pedestrian is not free from negligence where, with knowledge of the practice of the railway operatives in switching across a sidewalk where no switchman is on duty, he steps upon the track in front of a car which he has observed standing near the point of collision. (*Grandy* v. *Southern Pac. Co.*, 9 Cal. App. (2d) 441 [49 Pac. (2d) 1127].)

The foregoing authorities refer to many others upholding the application of the doctrine of contributory negligence in

the cases of pedestrians or others who go upon tracks over which cars and trains frequently pass. These authorities, strictly applied, render easy a superficial solution of many controversies growing out of the collisions of streetcars with persons who cross railroad tracks. No formula has been invented whereby in a few brief words it can be said that under all circumstances a person crossing over or walking upon a streetcar track may be said to be guilty of or free from negligence. In order to do justice the facts of a case must be scrutinized cautiously and weighed thoughtfully in the light of all applicable rules. Particularly is this true where from the many aspects of the facts various principles may be brought to play. Under such circumstances it is only after the sifting process has been completed, after all material facts have been gleaned, and when the authorities have been harmonized, that a court may feel with a fair degree of certainty that a just conclusion has been derived.

▆ The facts of the instant case may with propriety be considered in the light of other coordinate principles which follow : (1) A pedestrian is not negligent as a matter of law to cross a streetcar track because he knows a streetcar is approaching. (2) A pedestrian has the right to use those portions of a street occupied by streetcar tracks so long as he does not unnecessarily obstruct the movements of cars. (3) It is not negligence for a pedestrian to walk in close proximity to or upon the track. (4) By reason of the mutual rights of both pedestrian and car to the area of the tracks, subject to the necessity for the former to yield upon signal of the approach of the latter, reciprocal rights obtain and reciprocal duties are imposed. ▆ (5) When a pedestrian is lawfully within a crosswalk dedicated to his uses, it is incumbent upon a motorman to see him and to use ordinary care to avoid running him down. (6) When traversing a street of congested traffic the pedestrian must look ahead and toward any quarter from which danger might come, in order to avoid colliding with others. (7) The pedestrian in a street intersection need not look continuously backward for a car he has seen standing, but must exercise only such degree of vigilance as would under the circumstances constitute reasonable care. ▆ (8) A pedestrian may rely upon a streetcar to sound the warnings which it customarily sounds when approaching the point where he walks. (*Noce* v. *United Railroads,* 64 Cal. App. 658 [222 Pac.

642] ; *Wright* v. *Los Angeles Railway Corp.*, 14 Cal. (2d) 168 [93 Pac. (2d) 135] ; *Aurenz* v. *Los Angeles Railway Corp.*, 35 Cal. App. (2d) 615 [96 Pac. (2d) 397] ; *Bailey* v. *Market St. Ry. Co.*, 3 Cal. App. (2d) 525 [40 Pac. (2d) 281] ; *Kuhn* v. *San Francisco*, 13 Cal. App. (2d) 641 [57 Pac. (2d) 147] ; *Gnesa* v. *City and County of San Francisco*, 40 Cal. App. (2d) 640 [105 Pac. (2d) 376] ; *Scott* v. *San Bernardino Valley Traction Co.*, 152 Cal. 604 [93 Pac. 677] ; *Berguin* v. *Pacific Elec. Ry. Co.*, 203 Cal. 116 [263 Pac. 220] ; *Hansen* v. *Market Street Ry. Co.*, 64 Cal. App. 426 [221 Pac. 955] ; *Hammond* v. *Pacific Electric Ry. Co.*, 32 Cal. App. 756 [164 Pac. 50] ; *Babcock* v. *Pacific Gas & Electric Co.*, 120 Cal. App. 218 [7 Pac. (2d) 736] ; *Runnels* v. *United Railroads*, 175 Cal. 528 [166 Pac. 18] ; *Dunbar* v. *San Francisco-Oakland T. Rys.*, 54 Cal. App. 15 [201 Pac. 330] ; *Campbell* v. *Los Angeles Railway Traction Co.*, 137 Cal. 565 [70 Pac. 624] ; *Gilmore* v. *Los Angeles Ry. Corp.*, 211 Cal. 192 [295 Pac. 41] ; *Ross* v. *San Francisco-Oakland T. Rys. Co.*, 47 Cal. App. 753 [191 Pac. 703] ; *Lawyer* v. *Los Angeles Pac. Co.*, 161 Cal. 53 [118 Pac. 237] ; *Arbunich* v. *United Railroads*, 28 Cal. App. 291 [152 Pac. 51] ; *Collins* v. *California Street Cable Ry. Co.*, 91 Cal. App. 752 [267 Pac. 731] ; *Smith* v. *Southern Pac. Co.*, 201 Cal. 57 [255 Pac. 500].)

[4]  In considering a motion for nonsuit the evidence must be viewed most favorably to the plaintiff. Such motion should not be granted except where there is no substantial evidence to support a verdict if awarded to plaintiff. (*Barnett* v. *La Mesa Post No. 292, American Legion Department of Calif.*, 15 Cal. (2d) 191–194 [99 Pac. (2d) 650] ; *Richardes* v. *Richardes*, 211 Cal. 392, 394 [295 Pac. 816].) If, by disregarding adverse evidence and by giving plaintiff's proof and every legitimate inference their full legal value, substantial evidence remains to support a verdict for plaintiff, a nonsuit should be denied. (*Gish* v. *Los Angeles Railway Corp.*, 13 Cal. (2d) 570 [90 Pac. (2d) 792].)  The significance of the presence of a car in the vicinity of a pedestrian's path is a question for the jury as is also his failure to look again to his right in the presence of what he considered a definite hazard in front of him. (*Nelson* v. *Southern Pac. Co.*, 8 Cal. (2d) 648 [67 Pac. (2d) 682].)  If plaintiff has presented such substantial evidence as will support a verdict in his favor, notwithstanding conflicts therewith, the nonsuit must be denied. (*Mitchell Camera Corp.* v. *Fox Film Corp.*, 8 Cal. (2d) 192, 197 [64 Pac. (2d) 946].)  A plaintiff has a right to have every

material issue of fact in a negligence case determined by the jury. A nonsuit should not be granted except where clearly no material issue remains for the jury's determination. (*Mastrangelo* v. *Westside U. H. School Dist.*, 2 Cal. (2d) 540, 544 [42 Pac. (2d) 634].)

From a consideration of the foregoing principles and the cited authorities, plaintiff's conduct was not such as to constitute negligence as a matter of law. He might have looked but once, before leaving the curb, and not have been negligent. Whether he was negligent in crossing where he had a right to cross, or to walk in his manner of walking, were facts for the jury's determination. He had a right to expect and rely upon a warning to be given as he neared the tracks and this right was a factor to be considered in his behalf. (*Noce* v. *United Railroads, supra; Hansen* v. *Market Street Ry. Co.*, 64 Cal. App. 426 [221 Pac. 955].) The traffic that whirled by plaintiff was calculated to render him anxious and confused. The arrival of the west bound streetcar was not a factor to assure him of his safety as it came to a stop near the crosswalk. Although he had memories of the custom of the motormen to give warnings as they cross Fairfax northeasterly toward the crosswalk, at the street center he looked again to see whether the east bound car was still standing. When the west bound car signaled for a start plaintiff, being on its track, moved on to the east bound track, where without a warning he was knocked down. If a reasonably prudent person in the position in which plaintiff found himself as he proceeded from the west bound track to the east bound track, fearful of the many lines of motor traffic to his right, would have ventured to cross the east bound track without looking again to the southwest, then it was not negligence in plaintiff to accept the hazard and undertake that crossing. Whether plaintiff was sufficiently vigilant or whether he looked too infrequently to the southwest as he walked towards the east bound tracks is a question upon which reasonable minds might differ, which fact entitled him to the findings of a jury. (*Bailey* v. *Market Street Ry. Co.*, 3 Cal. App. (2d) 525, 530 [40 Pac. (2d) 281].) In forming a judgment whether he should proceed he was warranted in considering the distance of the crosswalk from the point at which the car had been standing, the speed at which it ordinarily made the diagonal crossing, the practice of the motormen to sound a

256

gong before entering the crosswalk, and all other circumstances which would tend to increase or diminish the need for caution upon his part. ■ While it was plaintiff's duty in the exercise of reasonable care to look in the direction of anticipated dangers, it was not incumbent upon him to oscillate his head like the pendulum of a clock to avoid colliding with others ahead of him and at the same time to watch the approach of the car behind him. He was required to exercise only such vigilance as would constitute reasonable care under the circumstances. ■ Whether he exercised reasonable care is the paramount fact to be determined by the jury from the evidence of the amount of his caution in looking out for cars, from a consideration of the rights of the parties and of their reciprocal duties, from the nature of the surface of the street and from all other facts, including whether the pedestrian had a right to rely upon a warning to be given by the motorman.

■ The rule of stop, look and listen, invoked by respondent, originated at a time when the only dangerous vehicles to be encountered were the locomotives which crossed highways, country lanes and bypaths. In the interest of economy the burden was cast upon the traveler who intended to cross railroad tracks to make certain that the time was opportune for his safety before attempting the crossing. But this rule cannot be applied to crossings of streetcar tracks on the streets of the modern municipality. Its throngs of pedestrians as well as of vehicular travelers must of necessity proceed along and upon streets where streetcars must run. If there be any hope that mankind may survive the perils of automotive traffic, it is incumbent upon all operators of electric and automotive conveyances to cooperate with one another and with pedestrians to the end that their common effort may terminate or at least lessen the tragical list of daily casualties. All drivers of such cars or vehicles should be governed by the humane instinct and desire to aid others and not to do them harm—to warn those who are in proximity to or who may be upon the track or course of their travel.

■ Respondent contends that the noise caused by the approach of the streetcar was in itself sufficient warning to appellant without the aid of the gong or whistle. Its brief contains passages from the testimony of one witness who was in the intersection at the time and who described the extent of the noise created by the east bound car as a sufficient warn-

ing of its approach. The answer to this contention is two-fold: First, on a motion for nonsuit in case of a conflict in the evidence the testimony which is favorable to the defense must be disregarded; the merits of the motion for nonsuit are to be measured by the most favorable evidence given on behalf of the plaintiff. In the second place, the testimony of the plaintiff was that although his ability to detect sound was good he did not hear the approach of the car. In view of the noise created by the motor traffic at that intersection, it was not unreasonable for plaintiff to rely upon the usual signals given by the streetcar operatives in approaching the crosswalk. His failure to hear the car entitled him to a jury's finding as to whether such failure was due to his negligence. The cases cited by respondent do not apply. (*Deike* v. *East Bay St. Rys., Ltd.*, 7 Cal. App. (2d) 544, 551 [46 Pac. (2d) 812]; *Schooley* v. *Fresno Traction Co.*, 56 Cal. App. 705 [206 Pac. 481].) In each of them plaintiff used no caution.

The judgment is reversed.

McComb, J., concurred.

A petition for a rehearing was denied August 27, 1941.